# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **GRANITE STATE INSURANCE COMPANY, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 18-9388-WBV-MBN** |
| **DELTA MARINE & ENVIRONMENTAL SERVICES, LLC** | **SECTION: D (5)** |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

## I. PROCEDURAL HISTORY

This matter concerns an outstanding default judgment issued by this Court in a separate matter in favor of Granite State Insurance Company and Commerce & Industry Insurance Company (collectively, "Plaintiffs"), and against Delta Marine Environmental, LLC ("Delta Marine").[1] The Judgment, issued on November 20, 2018, in the amount of $304,488.00, represents the outstanding balance owed by Delta Marine for three workers' compensation insurance policies issued by Plaintiffs for three separate policy periods between April 30, 2015 and April 30, 2018.[2] After the issuance of the November 20, 2018 Judgment, Plaintiffs learned of the existence of Delta Marine and Environmental Services, LLC ("DM&ES"), which Plaintiffs believe is a successor in interest of Delta Marine. As a result, Plaintiffs commenced

---

[1] *See* R. Doc. 21 in *Granite State Insurance Co. v. Delta Marine Environmental, LLC*, Civ. A. No. 18-3571-LMA-MBN (E.D. La.).
[2] *Id.*

this action to enforce the November 20, 2018 Judgment against DM&ES based upon successor liability or, alternatively, the single-business enterprise theory of liability.

The issue to be resolved before this Court is straightforward: whether DM&ES is a mere continuation of Delta Marine or, in the alternative, whether DM&ES and Delta Marine are a single business enterprise. If DM&ES is determined to be either a continuation of Delta Marine or a single business enterprise with Delta Marine, the second issue before the Court is whether DM&ES is liable in privity for the default judgment entered against Delta Marine in the prior case.

The parties in this matter originally agreed to proceed in this matter on cross-motions for summary judgment in lieu of trial.[3] Thereafter, the Court held a status conference with counsel and requested that counsel provide the Court with a joint statement of undisputed facts in an effort to determine whether cross-motions for summary judgment would be appropriate.[4] After reviewing the joint statement of undisputed facts,[5] the Court determined that genuine issues of material fact remained in dispute and that the matter would proceed to trial.[6] The Court subsequently denied the parties' cross-motions for summary judgment,[7] and set the matter for a bench trial.

During the final pre-trial conference, counsel agreed to submit the matter for decision on the papers, including the parties' respective summary judgment briefs,

---

[3] R. Doc. 69.
[4] R. Doc. 71.
[5] R. Doc. 72.
[6] R. Doc. 83.
[7] R. Docs. 115 & 116.

trial exhibits, and oral argument.[8] The matter proceeded by bench trial, with the parties presenting oral argument on November 13, 2019.[9] The parties thereafter submitted respective Proposed Findings of Fact & Conclusions of Law.[10] The Court has carefully considered the evidence and the arguments of counsel. Pursuant to Rule 52 of the Federal Rules of Civil Procedure, the Court hereby enters the following findings of fact and conclusions of law. To the extent that any findings of fact constitute conclusions of law, the Court hereby adopts them as such. To the extent any conclusions of law constitute findings of fact, the Court hereby adopts them as such.

## II. FINDINGS OF FACT

1.

On October 7, 2014, Patrick Berrigan and Houston McVea registered Delta Marine Environmental, LLC ("Delta Marine") with the Louisiana Secretary of State.[11]

2.

Delta Marine began operating in approximately October 2014.[12]

3.

Christopher Meredith began working for Delta Marine in October 2014.[13]

---

[8] R. Doc. 119.
[9] R. Doc. 120.
[10] R. Doc. 123 and 124.
[11] R. Doc. 72 at ¶ 2.
[12] *Id*. at ¶ 4.
[13] R. Doc. 72-3 at p. 9, Deposition of Christopher Meredith, taken May 21, 2019, at 24:1-19; R. Doc. 72-2 at p. 11, Deposition of Gaetano Sergi, taken May 21, 2019, 31:22 – 33:11.

4.

Guy Sergi began working for Delta Marine in January 2015.[14]

5.

Sergi and Meredith served in managerial/supervisory positions during the entirety of their tenure at Delta Marine.[15]

6.

Delta Marine had a line of credit with Hancock Whitney Bank.[16]

7.

Delta Marine's line of credit with Whitney Bank was set to freeze on July 20, 2017. Delta Marine attempted to find a buyer before July 20, 2017, but such efforts were unsuccessful.[17]

8.

On July 20, 2017, Patrick Berrigan, Guy Sergi, Christopher Meredith, Houston McVea and Scott Satter entered into a Unanimous Written Consent concerning Delta Marine, Conrad Schimmel and DM&ES.[18]

9.

The Unanimous Written Consent includes the following provision:

> **WHEREAS**, in lieu of ceasing operations, in its entirety, [Delta Marine], along with all of its undersigned Members and Manager, hereby consent to the [Delta Marine] entering into an agreement with Mr. Conrad Schimmell

---

[14] R. Doc. 72-3 at ¶ 5. R. Doc. 72-2 at p. 17, Deposition of Gaetano Sergi, taken May 21, 2019, at 57:9-23.
[15] R. Doc. 72 at ¶ 6; *See* R. Doc. 72-2 at p. 11, Deposition of Gaetano Sergi, taken May 21, 2019, at 16:14-15.
[16] R. Doc. 72 at ¶ 7; Defendant's Exh. 22, Bates labeled GRANITESTATE_WHITNEY0898.
[17] R. Doc. 72 at ¶ 7.
[18] R. Doc. 72 at ¶ 9; R. Doc. 72-4/Defendant's Exh. 4.

and/or Delta Marine and Environmental Services, LLC, the entity Mr. Schimmell intends to form (collectively referred to hereinafter as "Schimmell"), as more particularly described hereinafter."[19]

10.

On August 1, 2017, Schimmel registered Delta Marine & Environmental Services, LLC ("DM&ES") with the Louisiana Secretary of State.[20]

11.

DM&ES was organized as a member-managed limited liability company with Schimmel as its sole member.[21]

12.

On August 4, 2017, Schimmel negotiated an Equipment Bill of Sale on behalf of DM&ES, with DM&ES listed as the buyer and Delta Marine listed as the seller, in the amount of $12,000.00.[22]

13.

Pursuant to the August 4, 2017 Bill of Sale, DM&ES purchased from Delta Marine, "all email addresses, all phone numbers, [and] website (www.deltames.com)."[23]

---

[19] R. Doc. 72-4 at p. 2.
[20] R. Doc. 72 at ¶ 3.
[21] *Id.* at ¶ 19.
[22] *Id.* at ¶ 10; R. Doc. 72-5/Defendant's Exh. 7.
[23] R. Doc. 72-5/Defendant's Exh. 7.

14.

On September 5, 2017, Schimmel entered into a second Equipment Bill of Sale on behalf of DM&ES, with Delta Marine listed as the seller and DM&ES listed as the buyer, in the amount of $254,626.50.[24]

15.

Pursuant to the second Equipment Bill of Sale, DM&ES purchased from Delta Marine certain equipment, including "pumps, hoses, hand tools misc equipment, goodwill."[25]

16.

Prior to purchasing assets from Delta Marine through the two Equipment Bills of Sale, DM&ES was not separately performing any services for customers.[26]

17.

Delta Marine and DM&ES serve customers in the same industry.[27]

18.

DM&ES purchased Delta Marine's customer list and acquired some customers from Delta Marine.[28]

19.

Delta Marine and DM&ES both provide cargo cleaning of cargo holds of ships.[29]

---

[24] R. Doc. 72 at ¶ 11; Defendant's Exh. 8.
[25] R. Doc. 72-6/Defendant's Exh. 8.
[26] R. Doc. 72 at ¶ 12.
[27] R. Doc. 72 at ¶ 13.
[28] R. Doc. 72 at ¶ 14; R. Doc. 72-7 at p. 17, Deposition of Conrad Schimmel, taken April 25, 2019, at 56:8-21; R. Doc. 72-2 at p. 25, Deposition of Gaetano Sergi, taken May 21, 2019, at 86:8-21.
[29] R. Doc. 72-7 at p. 11, Deposition of Conrad Schimmel, taken April 25, 2019, at 32:19 – 33:1; R. Doc. 72-2 at p. 19; Deposition of Gaetano Sergi, taken May 21, 2019, 62:5-9; 64:2-9.

20.

Delta Marine initially operated out of locations in Slidell and Arabi in 2015, before moving to a location at 13080 Chef Menteur Highway in New Orleans, Louisiana (the "Chef Menteur Property"), in approximately February 2016.[30]

21.

DM&ES initially operated out of the Chef Menteur Property, before moving to a location at 61134 St. Tammany Avenue in Slidell, Louisiana 70460 (the "St. Tammany Property"), in the beginning of 2018.[31]

22.

In a February 24, 2016 email, Delta Marine employee Patrick Berrigan's email signature block identified his employer as "Delta Marine & Environmental Services, LLC."[32]

23.

The majority, if not all, of Delta Marine's employees became employees of DM&ES, at least initially.[33]

---

[30] R. Doc. 72-2 at p. 18, Deposition of Gaetano Sergi, taken May 21, 2019, at 58:2-7; 59:1 – 61:19; R. Doc. 72-7 at p. 14, Deposition of Conrad Schimmel, taken April 25, 2019, at 42:2-13.
[31] R. Doc. 72-7 at pp. 9, 14, Deposition of Conrad Schimmel, taken April 25, 2019, at 24:15-19; 42:2-17; R. Doc. 72-2 at pp. 25, 28, Deposition of Gaetano Sergi, taken May 21, 2019, at 88:15-18; 99:3-9; R. Doc. 72-1 at pp. 16-17, Deposition of Patrick Berrigan, taken May 21,2019, at 53:2 – 54:20. *See* R. Doc. 72 at ¶ 16.
[32] R. Doc. 72 at ¶ 17; R. Doc. 72-1 at pp. 11-12, Deposition of Patrick Berrigan, taken May 21,2019, at 33:17 – 34:24.
[33] R. Doc. 72-2 at pp. 24-25, Deposition of Gaetano Sergi, taken May 21, 2019, at 85:17 – 86:7.

24.

Guy Sergi and Christopher Meredith served in supervisory and management positions for Delta Marine,[34] and continued to serve in supervisory and management positions at DM&ES.[35]

25.

Delta Marine sold its Chef Menteur property to CPMM, LLC, an entity owned by Patrick Berrigan.[36]

### III. CONCLUSIONS OF LAW

1.

The Court has diversity jurisdiction under 28 U.S.C. § 1332 because the parties are citizens of different states and the requisite amount in controversy is satisfied.

2.

Plaintiff Granite State Insurance Company is a citizen of Illinois and New York. Plaintiff Commerce and Industry Insurance Company is a citizen of New York. Defendant Delta Marine & Environmental Services, LLC is a citizen of Louisiana because its sole member, Conrad Schimmel, is a citizen of Louisiana.

---

[34] R. Doc. 72-1 at p. 13, Deposition of Patrick Berrigan, taken May 21, 2019, at 40:1-7; R. Doc. 72-2 at pp. 17-18, Deposition of Gaetano Sergi, taken May 21, 2019, at 55:15 – 58:1.
R. Doc. 72-3 at p. 12, Deposition of Christopher Meredith, taken May 21, 2019, at 34:2-23.
[35] R. Doc. 72-1 at p. 13, Deposition of Patrick Berrigan, taken May 21, 2019, at 40:1-7; R. Doc. 72-2 at p. 24, Deposition of Gaetano Sergi, taken May 21, 2019, at 85:17-21; R. Doc. 72-7 at pp. 8, 14-15, Deposition of Conrad Schimmel, taken April 25, 2019, at 21:4-18; 45:17 – 46:2.
[36] R. Doc. 72-1 at pp. 5, 6, 7-8, Deposition of Patrick Berrigan, taken May 21, 2019, at 9:12-23; 12:1-13; 17:1 – 18:4; 19:4-19.

3.

The amount in controversy in this case exceeds $75,000.00, as Plaintiffs seek to enforce a default judgment in the amount of $304,448.00.

4.

Venue is appropriate in this district.

5.

The Fifth Circuit, applying Louisiana law, has held that a newly organized corporation is liable for the debts of an older corporation where the circumstances surrounding the creation of the new corporation show that the new corporation is merely a continuation of the predecessor.[37]

6.

The purpose of this "mere continuation" exception to the rule of non-liability is to prevent two corporations from merging, while limiting the liability of the surviving corporation by structuring the transaction as a sale of assets.[38] Accordingly, as noted by Louisiana courts, "A threshold requirement to trigger a determination of whether successor liability is applicable under the 'continuation' exception is that one corporation must have purchased all or substantially all of the assets of another."[39]

---

[37] *Bank of America, N.A. v. Garden District Pet Hospital, Inc.*, Civ. A. No. 2016 WL 952250, at *7 (E.D. La. Mar. 14, 2016) (quoting *Hollowell v. Orleans Regional Hosp. LLC*, 217 F.3d 379, 390 (5th Cir. 2000)) (internal quotation marks omitted).

[38] *Bank of America, N.A.,* Civ. A. No. 2016 WL 952250, at *7 (citing *Murray v. B&R Mach.95073937*, Civ. A. No. 92-4030, 1995 WL 133346, at *4 (E.D. La. Mar. 24, 1995)).

[39] *Bank of America, N.A.,* Civ. A. No. 2016 WL 952250, at *7 (quoting *J.D. Fields & Co. v. Nottingham Const. Co., LLC*, C2015-0723 (La. App. 1 Cir. 11/9/15), 184 So.3d 99, 103).

7.

In *Hollowell*, the Fifth Circuit held that a district court should consider the following eight factors to determine whether an entity is operating as a "mere continuation" of another entity:

1. retention of the same employees;
2. retention of the same supervisory personnel;
3. retention of the same production facility in the same physical location;
4. production of the same product;
5. retention of the same name;
6. continuity of assets;
7. continuity of general business operations; and
8. whether the successor holds itself out as a continuation of the previous enterprise.[40]

8.

After reviewing the exhibits submitted by the parties, the Court concludes that a majority of the *Hollowell* factors weigh in favor of finding that DM&ES is operating as a mere continuation of Delta Marine.

9.

With respect to the first *Hollowell* factor, retention of the same employees, the evidence establishes that after its legal formation, DM&ES retained most of Delta Marine's employees. [41]

10.

With respect to the second *Hollowell* factor, retention of the same supervisory personnel, the Court finds that Guy Sergi and Christopher Meredith served in

---

[40] *Hollowell*, 217 F.3d at 390.
[41] R. Doc. 72-2 at pp. 24-25, Deposition of Gaetano Sergi, taken May 21, 2019, at 59:1; 85:17 – 86:7.

supervisory and managerial positions for Delta Marine,[42] and continued to serve in supervisory and managerial positions at DM&ES.[43]

11.

Regarding the third *Hollowell* factor, retention of the same production facility in the same physical location, the evidence shows that Delta Marine and DM&ES operated in the same two physical locations. At its inception, Delta Marine briefly operated out of a building located at 61134 St. Tammany Avenue in Slidell, Louisiana 70460 (the "St. Tammany Property"), but generally operated out of a building located at 13080 Chef Menteur Highway in New Orleans, Louisiana (the "Chef Menteur Property"). The evidence also shows that from its inception on August 1, 2017, until approximately February 2018, DM&ES operated at the Chef Menteur Property.[44] DM&ES formally leased the St. Tammany Property between March 1, 2018 and February 29, 2020.[45]

12.

With respect to the fourth *Hollowell* factor, production of the same product, during the entirety of their respective existences, the principal business of both Delta Marine and DM&ES has been barge-cleaning services, including both wet and dry

---

[42] R. Doc. 72-1 at p. 13, Deposition of Patrick Berrigan, taken May 21, 2019, at 40:1-7; R. Doc. 72-2 at pp. 17-18, Deposition of Gaetano Sergi, taken May 21, 2019, at 55:15 – 58:1.
R. Doc. 72-3 at p. 12, Deposition of Christopher Meredith, taken May 21, 2019, at 34:2-23.
[43] R. Doc. 72-1 at p. 13, Deposition of Patrick Berrigan, taken May 21, 2019, at 40:1-7; R. Doc. 72-2 at p. 24, Deposition of Gaetano Sergi, taken May 21, 2019, at 85:17-21; R. Doc. 72-7 at pp. 8, 14-15, Deposition of Conrad Schimmel, taken April 25, 2019, at 21:4-18; 45:17 – 46:2.
[44] R. Doc. 72-7 at pp. 9, 14, Deposition of Conrad Schimmel, taken April 25, 2019, at 24:15-19; 42:2-17; R. Doc. 72-2 at pp. 25, 28, Deposition of Gaetano Sergi, taken May 21, 2019, at 88:15-18; 99:3-9; R. Doc. 72-1 at pp. 16-17, Deposition of Patrick Berrigan, taken May 21,2019, at 53:2 – 54:20. *See* R. Doc. 72 at ¶ 16.
[45] R. Doc. 72 at ¶ 16.

cargo cleaning.[46] Christopher Meredith testified during his deposition that when DM&ES began operating, it "tried to provide [Delta Marine's customers] with the same type of service that we had for 20 years in different entities."[47]

13.

The fifth *Hollowell* factor, retention of the same name, also weighs in favor of finding that DM&ES is a mere continuation of Delta Marine. Although the two entities have different names – Delta Marine Environmental, LLC and Delta Marine & Environmental Services, LLC – the Court finds the names sufficiently similar to create a sense of continuity in the eyes of the consumer.

14.

The sixth *Hollowell* factor, continuity of assets, also weighs in favor of finding that DM&ES is a mere continuation of Delta Marine. Through two Equipment Bills of Sale, dated August 4, 2017 and September 5, 2017, DM&ES bought all of Delta Marine's assets except for the Chef Menteur property for $266,626.50.[48] These assets included Delta Marine's email addresses, phone numbers, website, goodwill and customer list, as well as pumps, hoses and miscellaneous equipment.[49]

15.

DM&ES asserts that it is not a mere continuation of Delta Marine because it did not purchase all or substantially all of Delta Marine's assets, since it did not

---

[46] R. Doc. 72-7 at p. 11, Deposition of Conrad Schimmel, taken April 25, 2019, at 32:19 – 33:1; R. Doc. 72-2 at p. 19; Deposition of Gaetano Sergi, taken May 21, 2019, 62:5-9; 64:2-9.
[47] Doc. 72-3 at p. 19, Deposition of Christopher Meredith, taken May 21, 2019, at 64:3 – 65:18.
[48] Defendant's Exhs. 7 & 8; R. Doc. 72 at ¶¶ 10, 11.
[49] R. Doc. 72 at ¶¶ 10, 11; R. Doc. 72-5/Defendant's Exh. 7; R. Doc. 72-5/Defendant's Exh. 8.

purchase Delta Marine's largest asset – the Chef Menteur property – which DM&ES values at $765,000.00.[50] The evidence, however, shows that during the applicable timeframe, the Chef Menteur Property was appraised at approximately $500,000.00, but was subject to a debt to Whitney Bank equal to approximately $765,000.00. Thus, the Court finds that the Chef Menteur Property cannot be considered a true asset of Delta Marine.[51] Accordingly, the Court finds that DM&ES, through the two Equipment Bills of Sale, purchased substantially all of Delta Marine's assets.

16.

With respect to the seventh factor, continuity of general business operations, on July 20, 2017, Patrick Berrigan, Guy Sergi, Chris Meredith, Houston McVea and Scott Satter entered into a Unanimous Written Consent, which specifically provides that, "[I]n lieu of ceasing operations, in its entirety, [Delta Marine], along with all of its undersigned Members and Manager, hereby consent to [Delta Marine] entering into an agreement with Mr. Conrad Schimmell and/or Delta Marine and Environmental Services, LLC, the entity Mr. Schimmell intends to form . . . ."[52] Christopher Meredith testified during his deposition that Delta Marine ceased operations shortly after the execution of the Unanimous Written Consent on July 20, 2017.[53] The undisputed evidence shows that DM&ES was registered with the Louisiana Secretary of State on August 1, 2017,[54] and that DM&ES was not

---

[50] R. Doc. 124 at ¶¶ 10-19 (citations omitted).
[51] The Court notes that when Conrad Schimmel was asked during his deposition why DM&ES did not purchase the Chef Menteur Property, he responded, "Because it's useless." R. Doc. 72-7 at p. 18, Deposition of Schimmel, taken April 25, 2019, at 61:16-23.
[52] R. Doc. 72 at ¶ 3,¶ 9; Defendant's Exh. 4.
[53] R. Doc. 72-3 at p. 19, Deposition of Christopher Meredith, taken May 21, 2019, at 62:17 – 63:9.
[54] R. Doc. 72 at ¶ 3.

separately performing any services for customers prior to purchasing assets from Delta Marine.⁵⁵ The evidence further shows that Delta Marine paid employees until DM&ES began managing the payroll. Employees did not miss any paychecks during the transition from Delta Marine to DM&ES; rather, the checks simply started coming from DM&ES instead of Delta Marine.⁵⁶ Accordingly, the seventh *Hollowell* factor weighs in favor of finding that DM&ES was a mere continuation of Delta Marine.

17.

The eighth and final *Hollowell* factor, whether the successor holds itself out as a continuation of the previous enterprise, also supports a finding that DM&ES is a mere continuation of Delta Marine. The evidence shows that Delta Marine's website referenced "Delta Marine & Environmental Services, LLC" long before DM&ES was registered with the Louisiana Secretary of State.⁵⁷ The DM&ES website also states that DM&ES has been in business since 2015, two years before it was even registered with the Louisiana Secretary of State.⁵⁸ The evidence further shows that Delta Marine and DM&ES used a common corporate logo with the name "Delta Marine & Environmental Services, LLC."⁵⁹ Delta Marine and DM&ES also used the same website address, www.deltames.com, and have used common email domain names

---

⁵⁵ R. Doc. 72 at ¶ 12.
⁵⁶ R. Doc. 72-2 at p. 22, Deposition of Gaetano Sergi, taken May 21, 2019, at 76:21 – 77:10.
⁵⁷ R. Doc. 84-8 at pp. 5, 8, 12, 14, 18, 20.
⁵⁸ *Id.* at p. 12.
⁵⁹ *See* R. Doc. 72-1 at p. 11, Deposition of Patrick Berrigan, taken May 21, 2019, at 31:3-21; R. Doc. 72-2 at pp. 16-17, Deposition of Gaetano Sergi, taken May 21, 2019, at 51:10 – 54:8; R. Doc. 72-3 at p. 11, Deposition of Christopher Meredith, taken May 21, 2019, at 30:13-21; 32:18 – 33:1; 33:7-23; R. Doc. 84-8 at pp. 2-3.

(*i.e.*, @deltames.com), which are associated with DM&ES's legal name.[60] Additionally, Delta Marine employees used the name "Delta Marine & Environmental Services, LLC" in email correspondence and on corporate letterhead.[61] The Court finds it especially compelling that Patrick Berrigan testified during his deposition that he warned Guy Sergi, Chris Meredith, and Houston McVea that Delta Marine was using "Delta Marine & Environmental Services, LLC" in its corporate logo, on its corporate letterhead, on its website, and in email signature blocks prior to the formation of DM&ES, and that he thought such references were improper and a product of "mob rule."[62]

18.

Based on the foregoing analysis of the eight *Hollowell* factors, the Court finds that DM&ES is a mere continuation of Delta Marine and, as such, that DM&ES is a successor to Delta Marine.[63]

19.

Because the Court finds that DM&ES is a successor to Delta Marine, the Court need not determine whether DM&ES and Delta Marine are operating as a single business enterprise.

---

[60] *See* R. Doc. 72-10; R. Doc. 72-1 at pp. 11-12, Deposition of Patrick Berrigan, taken May 21, 2019, at 33:7 – 34:24; R. Doc. 72-2 at p. 17, Deposition of Gaetano Sergi, taken May 21, 2019, at 55:2-14; R. Doc. 84-8 at pp. 2-3, 21.
[61] *See* R. Doc. 72 at ¶17; R. Doc. 72-10; R. Doc. 72-1 at pp. 8-9, 12, Deposition of Patrick Berrigan, taken May 21, 2019, at 21:8 – 23:10, 34:1 – 35:16.
[62] R. Doc. 72-1 at pp. 8-9, 12, Deposition of Patrick Berrigan, taken May 21, 2019, at 21:8 – 23:10, 34:1 – 35:16.
[63] *See Hollowell v. Orleans Regional Hosp. LLC*, 217 F.3d 379, 390-91 (5th Cir. 2000); *Munive v. Chet Morrison Offshore, LLC*, Civ. A. No. 06-11203, 2008 WL 544183, at *3-5 (E.D. La. Feb. 25, 2008).

20.

The Court must next determine whether DM&ES is liable for Delta Marine's debt under successor liability.

21.

The Fifth Circuit has held that judgments are enforceable against parties in privity, and that successors are in privity with their predecessors.[64]

22.

On November 20, 2018, Plaintiffs obtained a valid and enforceable judgment against Delta Marine in the amount of $304,488.00, plus pre-judgment and post-judgment interest.[65]

23.

The Court finds that as a successor of Delta Marine, DM&ES is liable for the November 20, 2018 Judgment in the amount of $304,488.00[66]

23.

Plaintiffs also request pre-judgment interest from the date that DM&ES' obligation became due through the date of this Court's final judgment, and requests post-judgment interest from the date of this Court's final judgment until DM&ES has fully satisfied that judgment.[67]

---

[64] *Daigle v. Cimarex Energy Co.*, 333 F.Supp.3d 604, 623 (5th Cir. 2018) (citations omitted); *Maxwell v. U.S. Bank*, 544 Fed. Appx. 470, 473 (5th Cir. Oct. 30, 2013) (citing *Russell v. SunAmerica Securities, Inc.*, 962 F.2d 1169, 1173 (5th Cir. 1992)).
[65] *See* R. Doc. 21 in *Granite State Insurance Co. v. Delta Marine Environmental, LLC*, Civ. A. No. 18-3571-LMA-MBN (E.D. La.).
[66] *See* R. Doc. 21 in Civil Action No. 18-3571-LMA-MBN.
[67] R. Doc. 123 at ¶ 50.

24.

"Under 28 U.S.C. § 1961(a), in diversity cases, post-judgment interest is calculated at the federal rate, while pre-judgment interest is calculated under state law."[68]

25.

Under Louisiana law, Plaintiffs may recover judicial interest at the established rate.[69] In cases involving insurance contract obligations, the interest is calculated from the "due date of the obligation in question."[70] The Court finds an award of prejudgment interest is appropriate in this case from the date of the November 20, 2018 Judgment through the date of this Court's final judgment regarding the instant Findings of Fact and Conclusions of Law.

26.

"Federal law governs post-judgment interest."[71] Plaintiffs may recover post-judgment interest pursuant to 28 U.S.C. § 1961, which provides that post-judgment interest, "shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published

---

[68] *Boston Old Colony Ins. Co. v. Tiner Assocs. Inc.*, 288 F.3d 222, 234 (5th Cir. 2002) (citing *Nissho-Iwai Co. v. Occidental Crude Sales*, 848 F.2d 613 (5th Cir. 1988)).
[69] *See* La. R.S. 13:4202. Section 4202(16) provides that, for lawsuits filed on or after January 1, 2002, the rate of judicial interest shall be set annually by the Louisiana Commissioner of Financial Institutions. The Commissioner publishes the judicial interest rates on his website, and the judicial interest rate in Louisiana was 5% between January and December 2018 (this case was filed on October 9, 2018). However, the judicial interest rate for 2019 was 6%, and the interest rate for 2020 is 5.75%. *See* http://www.ofi.state.la.us/ .
[70] *In re Matter of Complaint of Settoon Towing, LLC*, 720 F.3d 268, 284-85 (5th Cir. 2013) (quoting *American Cyanamid Co. v. Elec. Indus., Inc.*, 630 F.2d 1123, 1129 (5th Cir. Unit A Nov. 21, 1980)); *See also* La. Civ. Code art. 2000 (providing, in pertinent part, that, "When the object of the performance is a sum of money, damages for delay in performance are measured by the interest on that sum from the time it is due . . . .").
[71] *Meaux Surface Protection, Inc. v. Fogleman*, 607 F.3d 161, 173 (5th Cir. 1994).

by the Board of Governors of the Federal Reserve System, for the calendar week preceding . . . the date of the judgment."[72] The Fifth Circuit "has required that a post-judgment interest at the federal rate be assessed against the pre-judgment interest."[73] Pursuant to the Plaintiffs' request and the applicable law, the Court finds that an award of post-judgment interest on the entire damages award, including pre-judgment interest, is appropriate in this case. The award of post-judgment interest shall run from the date of this Court's final judgment until DM&ES has fully satisfied that judgment.

## IV. CONCLUSION

Based on the foregoing Findings of Fact and Conclusions of Law, the Court finds that Delta Marine & Environmental Services, LLC is the successor of Delta Marine Environmental, LLC and that Plaintiffs are entitled to a judgment against Delta Marine & Environmental Services, LLC in the amount of $304,488.00. The Court also finds that Plaintiffs are entitled to an award of pre-judgment interest at the Louisiana rate from November 20, 2018 through the date of this Court's final judgment, as well as an award of post-judgment interest at the federal rate from the date of this Court's final judgment until it is paid in full.

---

[72] 28 U.S.C. § 1961(a).
[73] *Boston Old Colony Ins. Co. v. Tiner Assocs. Inc.*, 288 F.3d 222, 234 (5th Cir. 2002).

Within fourteen (14) days, the parties shall submit to the Court a proposed form for a final judgment in accordance with these findings and conclusions.

**IT IS SO ORDERED.**

New Orleans, Louisiana, January 17, 2020.

_____
**WENDY B. VITTER**
**United States District Judge**